May it please the court, counsel, I'm Shirley Lobel representing the appellant Matthew Simpson. This case is before the court for the second time. It was reversed, a count of his conviction was previously reversed by this court and it was and the sentence vacated and it was remanded. There has now been a re-sentencing and we were before the court on the re-sentencing which has been challenged in our appeal briefs. Counsel, I wish every lawyer that appeared here had as good a speaking voice as you do. Thank you, your honor. I congratulate you and I'm grateful to you for it. Thank you so much. The main issue presented on this appeal is whether or not the court below arrived at a sentence in this case in a manner that was procedurally incorrect on numerous grounds and also substantively correct for a number of reasons. Ordinarily, as this court knows better than I, one first calculates whether we have procedural reasonableness before we go on to the question of substantive reasonableness. In this case, the government has asserted principally in its briefing that the mandate rule forecloses many of the procedural issues in this case because they were not raised in the first appeal. That said, it is principally the position of the appellant in this case that the court below relied on improper factors in determining the sentence in this case. We have . . . the record, of course, is before the court, but the important thing is that if one examines the transcript of this sentencing, it is very apparent that the court below is Ascribing to the defendant's failure, so-called, to admit guilt in this case is the principal motivating factor for the sentence here. The court says this over and over again. This is well beyond the situation that applies when a court comments as part of a larger whole on a lack of remorse. We assert as well that there was not a lack of remorse, but leaving that issue to the side for a moment, the judge focused, as he tells us, on those who come before him and are willing to admit that they committed the crime. Is this reading from the resentencing or the original sentence? The resentencing. So it would help me if you began a little bit with the remand rule, and what . . . as I see it, there are three scenarios. Defendant doesn't raise an issue on original appeal and then attempts to assert it after the resentencing. Defendant does raise the issue, but loses that original appeal and wins on some other ground for remand. Or the third scenario is an issue that is remanded then bleeds into new issues. So your principal argument is the substantive unreasonableness that the panel specifically said was still alive. Is that the argument you're going to . . . That is correct, Your Honor. The rest of the issues would fit into one of those various categories, and we'd have to parse through how the mandate will work. That is correct, Your Honor. Or do you just want to address the one that footnote one explicitly said was left to you? That is correct, Your Honor. I wouldn't presume to go so far as to say this court knows better than we what its mandate meant. I know that initially, at least, the lower court considered it, as did we, a resentencing on the whole. The argument about a sentence being improper because of lack of remorse. There was the same concern by the sentencing judge at the original sentencing, but then it wasn't raised on appeal, so you do run into Griffith. But then I would guess what you would say is by virtue of substantive unreasonableness and the letter, which only came in for the first time in the second one, correct? He wrote that letter in the intervening period? That letter was submitted at the resentencing only, Your Honor. And I would respectfully disagree that the mandate rule applies to the substantive reasonableness issue. For this reason, we are asking the court to look at how the court assessed this sentencing. And that can only be judged on the words that were spoken and what the court's reasons given for the resentencing were. To apply the mandate rule to that which has not yet occurred would seem to us to be unreasonable and a little bit like Jell-O. You can't quite grab hold of that. Leaving aside for the moment, of course, the fact that the mandate rule is subject to any number of exceptions. It's not inviolate. As the Lee case holds, and that's a case where the judge on a remand actually was not But here we have a situation where virtually all that the judge says is you went to trial, you testified in your defense, you committed perjury, all issues which have been taken into account not only by the guidelines but in the previous appeal to this court, which sustained that enhancement. So now you're before the lower court for a resentencing and all the court focuses on is the fact that you did not admit your guilt and the court says it, as we've outlined in our brief, the court says it over and over again. It's also substantively unreasonable because the court does not do anything more than give a perfunctory analysis to the 3553A factors. Other than to say I've thought about it, the court does not in any way discuss those and they're substantial. You're not dealing with a disposable person here. He's been sentenced for events that occurred from ages 18 to 25 to spend his entire or almost his entire adult life incarcerated and by that I mean that portion of his life where we develop our talents, we marry, we have children. He has been sentenced for property crimes and I'm not saying this to trivialize the offense but I'm saying on a scale of one to ten, these were property crimes and there was no account taken of the substantial matters that could be said in his favor. And those substantial matters... The sentencing court didn't even acknowledge the prison behavior in the letters or did it acknowledge them, do you think, in a perfunctory way? A very perfunctory way. Not only the prison letters but everything that had been written on behalf by people who knew this young man well. He started repairing computers and having his own business before he was 16 years of age. It was well documented on this record that he spent a substantial portion of his time helping other people, built computers for them, helped people with computers. There were many aspects of his character, as we point out in the brief, that were totally inconsistent with being a disposable person and his behavior post-conviction, post-incarceration from both the prison officials and the inmate was constructive, good behavior. Remind me, was this a low-end guideline or was it actually a departure? It was a variance in us. A variance below us. Yes. And... What's your best case that... Do you have any case that says substantive unreasonableness because the sentencing judge didn't give you a substantial enough departure downward because you invoked direct trial? What's the best case that's even close... I think the case that comes closest to what happened here is... I'm not aware of a case in the Fifth Circuit that actually fits this as well, but the Corsi case out of the Second Circuit, which we cite in our brief, is very much on point because that's a situation where when, as the court... I don't know that the court used the terminology absurd, but when an extreme result is reached, as it was in that case, that you have to default to a reasonableness analysis. What we do know from the cases in this circuit over and over again is that there are two factors which make this substantively unreasonable. The first is that it was formulated on an improper basis. This court said as much in the original Simpson opinion as it was defending what the court had done in one respect, and it said, of course, under our constitutional system, you may not penalize a defendant for going to trial. There's no question that this... that he sees a man who's convicted of a 1512 violation of obstruction of justice. Then you have perjury at trial, and then he perceives the letter to be trivializing and minimizing it. It's a sort of aggregation of things that he observes. I don't think he says, I'm punishing you for going to trial. I think he's saying, I think I can't deter you if you get out. I think if you look at the spectrum of obstruction of justice offenses, respectfully, Your Honor, I think this would rank very low. The deletion of his own... If you don't have control over arrests, you don't have control over anything. I'm not trying to relitigate that. We've made these points before, but I'm talking about in terms of what are we dealing with here. Are we dealing with a... You know, obstruction runs all the way from relatively minor interferences with the course of justice to very substantial ones. Did the defendant allocate those sentences? Did he just get up and say, this has been a horrible episode, and I want to... No, and I certainly don't think you can add to his punishment... No, I'm just wondering if he... No, he did not speak further, but he did write the letter to the court. And that is a form of allocution, although in a written form. If I may digress for a moment and discuss an issue that the government contends is barred by the mandate rule because it's such an important issue and I want to fully open as the court directed. And that is the provisions of the law that we've discussed at length. And this concededly was not raised in the original appeal. It was not even raised in the paperwork of the original appeal. And that is the 12-year maximum sentence that is imposed under the law for 1349 offenses. Now, if there's anything that should not be barred by the mandate rule, it should be the proper determination of what is the maximum sentence. And the maximum sentence here we contended below and before this court for the 1349 offense is 12 years because that's what it says. And respectfully, the government has pointed us to the Pontefract decision of this court, albeit not precedent, and that decision actually supports the view that the 12 years applies because you do not go outside. You have to go outside the statute itself to find the punishment. I believe my time has expired. Thank you. Thank you, counsel. You've saved time for the vote. May it please the court, counsel. Brian McKay on behalf of the United States. Mr. Simpson has raised numerous issues to this court. And as I state in my brief, I think the court should reach only to the mandate rule and the substantive reasonableness of the chosen sentence. And for that reason, I plan to focus my time this morning with the court on the mandate rule. But, of course, I invite the court's questions to any of the issues that have been raised, especially if the court harbors any concern about the government's position. Now, this court stated in Marmolejo that at a resentencing on remand, the district court can consider whatever this court directs, no more and no less. And the mandate here was really quite simple. The district court was told to back out the conviction in the 84-month concurrent sentence on count seven and determine what effect, if any, backing that conviction out had on the remaining three affirmed counts of conviction. The district court wasn't directed to conduct a de novo resentencing. It wasn't directed to reconsider the guidelines application, except to the extent it might have been implicated by reversal of count seven. And the court wasn't directed to reconsider the statutory range of any of the remaining counts of conviction. So count seven is vacated because there's insufficient evidence? Correct. And then in the relief section, the court just says resentencing. It doesn't narrow it in any way. And then there's footnote one, which says – implies – well, we're not going to speak to your substantive unreasonableness because we've knocked out one count. That sort of makes me think the court's looking at this as a big knot, right, which is how the Second Circuit looks at sentencing. That it's one knot, and if you take out part, you've just got to start again. Well, I think the court wouldn't reach the substantive reasonableness of a sentence that, admittedly, the district court may reconsider. It's instructed the district court to reconsider it. Cancel. One of my major concerns with your argument about the mandate is I've sat on panels where issues have come up. Sometimes they weren't preserved below. We said, look, we're sending this back for resentencing. We don't know what sentence the judge is going to give. He's going to take – he or she's going to take a whole new look at this. It's not necessary to reach all these other issues. Sometimes we do to give guidance. Sometimes we don't. Now, whether that's correct or not, that's what happens. And I'm a little bit concerned to say a hard and fast rule, if it's not raised in the first appeal, that it's forever, ever taken out of the hands of the district court. I mean, I agree with Judge Higginson. It's a whole new sentence. I understand. And that's why the court didn't reach substantive reasonableness, I believe. But this court has stated, not completely hard and fast, it's not jurisdictional, but has stated in Marmolejo and Matthews and many times since that – and Haas – issues that aren't raised in the first appeal are waived unless one of the three – And that makes sense to me. In this case, the Simpson 1 panel decided a bunch of enhancements. You could – I wouldn't think you could ever relitigate those. That's the one bite. But I don't remember Marmolejo being one where if you didn't raise it at the first time, that that's the Griffith rule, right? That you can't then revive it. But the trouble with that is new things happen. Like the prison letter comes in. I mean, the guy's letter to the court plus the other prisoner's letter to the court. Then there's this extensive dialogue and maybe the judge gets more upset. There's less remorse. A huge amount of new events occur. And you're saying those are beyond limitation? Not with respect to substantive reasonableness. To the extent the court believed it was important to reach the issue of remorsefulness or anything like that, in the context of substantive reasonableness, no. Or actually decided to revisit everything. So clearly the district court didn't – the government didn't interject. Did you? It did. Yes. You did, but he went beef. What did the court do on the mandate rule? Certainly. What had happened was the court addressed first the defendant's objections. The defendant had raised those. Then when the court turned to the government, the government at that point said, Your Honor, these shouldn't even be reached because they aren't covered by the court's mandate. And the court, Your Honor, Judge Fitzwater said explicitly, I'm going to assume for purposes of this that the – I'm sorry, the defendant had the ability to raise these issues. But the court recognized that this court could disagree, in which case those issues would essentially become inconsequential because they weren't covered by the mandate rule. I believe the court was doing it as a matter of judicial economy. Inconsequential meaning harmless. But let's say he ruled differently. Would the government then be able to appeal saying he violated the mandate rule? Possibly so. Possibly so. Now one of the things I want to point out about whether or not this court's mandate covered those other issues, I will point out that in Simpson 1, the court reached the issue of harmlessness and noted that it was possible to affirm the sentence on the other three convictions due to harmlessness. Now ultimately the court didn't do that because the government couldn't satisfy its very high burden to show harmlessness there. But I don't believe the court would have reached that issue and specifically entertained that if the court – if the district court was either by law or for some reason precluded from imposing the same sentence. Now, Your Honor, Judge Higginson had pointed out that the district court reconsidered things. And I wouldn't – I don't believe the district court reconsidered them so much as the district court went back to. And again, and it's more than approximately two days. He said he did. Judge Fitzwater said he did, didn't he? He said, I spent two days on the sentence recensing hearing. I looked back at why I did what I did. I went back and rethought everything is what he said. Yes, Your Honor, and maybe I should be more precise. I don't think the court went back and said, I looked at my reasoning in the first instance. He said he spent two days. I mean that looks like he's fairly meticulous in considering every aspect of the sentence. Absolutely, and this court – this district court is nothing if not meticulous. In bringing it forward, the court looked at its reasoning in the first sentencing and questioned is there anything about the Fifth Circuit's decision or are there other facts that have occurred since then that would change the district court's reasoning in the first instance. And so it did reconsider in the sense of it did consider it again. But I don't believe that the district court applied a different reasoning. And by the way, I think that's one of the reasons that this issue about whether remorsefulness can be considered as a procedural reasonableness issue, I don't think that it can be considered under the mandate rule because it was the very same. I think it's analogous to the first exception to the mandate rule. If a trial has substantially different evidence, we don't apply the mandate rule there. Well, I think by analogy, if the court had veered off and said, I understand that was my reasoning in the first instance, here I'm going to apply a different reasoning, then maybe then the mandate rule doesn't apply. But here the district court applied the very same reasoning that it did in the first instance, just questioned whether anything had occurred either in this court during the first appeal or in Mr. Simpson's case that would cause the court to think differently, and it hadn't. Now, I recognize that there are two issues that don't fall neatly into sort of the waiver theory of the mandate rule. And I'll discuss those exceptions in a minute. But I think every other argument, say substantive reasonableness, that he raises could have been raised in the first appeal. And the court has spoken in that language of what could have been raised in the first appeal and wasn't from a procedural reasonableness standpoint. That language isn't in the court's language, but I think that that's what it means. Those issues of procedural reasonableness that could have been raised in the first appeal and were not can't be before the district court and can't be before this court after resentencing. Now, those two special circumstances, I believe, are his argument about res judicata and double jeopardy. And I recognize that those are explicitly predicated on the fact that there was a second resentencing. And so for that, it couldn't have been raised in the first instance. But I do want to point out that those are still precluded by the mandate rule because, again, the district court's mandate was to back out any incremental increase in the sentence that was attributable to count seven. It didn't require the court to think again about whether applying a second sentence onto a vacated sentence, actually for the first time applying a sentence, violated double jeopardy or somehow res judicata. I recognize, though, that the court may reach the merits of those arguments just because doing so may be the most expedient path to affirmance here. And if the court did that, the res judicata argument, as I stated in my brief, simply doesn't apply. That's a principle that applies across lawsuits, not within the same lawsuit. And, again, I would point to this court's reaching the issue of harmlessness in the first instance as proof that the district court wasn't somehow precluded as a matter of law from applying the same sentence to the three affirmed convictions. The court, I don't think, would have reached harmlessness if the district court was precluded from applying the same sentences. Turning to the issue of substantive reasonableness, I think this court, as the court is well aware, has applied a presumption of substantive reasonableness to a within-guideline sentence. And as Your Honor, Judge Higginson had pointed out, this was a sentence below the applicable guidelines range. The only thing that changed was the statutory maximum from 50 to 40? From 600 months in the aggregate to 516 months in the aggregate. That's the guidelines. He asked about the statutory maximum. With count seven gone, you lost 10 years in the maximum. I believe the maximum was lost by seven years. I think totaling, if the court was to stack all of the convictions, I think in the first proceedings, it would have totaled 600 months. And in the second, in the resentencing proceedings, it would have totaled 516 months. And that the, yes, Your Honor, Judge Owen, the guidelines range went down. Was looking about the statutory maximum. Precisely, yes. And so that was the change, that the practical effect of the court's reversal of count seven. And we know from, I think the case cited in my brief is the 2013 decision in Brown. But for many other cases, we know that the defendant's mere disagreement with how the district court weighed the sentencing factors is insufficient to rebut the presumption. And I'm not sure if the court. I'm just curious, what drove this? Was it the loss amount that drove this? He's a first offender, right? He's a category one? That's correct. And so was it that things became consecutive, or was it that the loss amount was so high? Because he ends up with 40 years. Right. The loss amount was very high. There was an actual loss to real victims, I think 45 of them, of more than $17 million. And an intended loss that was actually over $20 million. So that this was a very large loss amount case. And that was one of the reasons, one of the arguments that Mr. Simpson made to Judge Fitzwater, to say that the loss amount was just too large a driver in this case. Judge Fitzwater acknowledged that he had heard that argument and explicitly said, I've taken that into consideration in assigning a non-guideline sentence below the guidelines range, but it doesn't incline me to impose a sentence any shorter than what I've chosen here. Did the government oppose the departure? What I think it was a departure. I don't believe so. And I may be incorrect on this, Your Honor, but I think the government argued for the guideline sentence, but didn't staunchly oppose Judge Fitzwater's decision here. This was, as the district court acknowledged and explicitly stated, a multi-year, complex, multifaceted, multi-victim offense. And even though Mr. Simpson wasn't previously convicted of an offense, this was quite a remarkable case to have his first conviction. He wasn't a typical first-time offender. This was a seven-year scheme. And this wasn't really just a scheme that defrauded companies in one particular way. It had several different, as Judge Fitzwater noted, multifaceted. It had several different ways in which these conspirators defrauded companies. Insurance fraud, lease fraud, defrauding companies of telecommunications services and goods. What was the most amount of time a co-conspirator got? Mr. Faulkner was a co-defendant who was also another one of the leaders, had the role enhancement like Mr. Simpson. Mr. Faulkner pled guilty, and he was sentenced to 30 years. He pled guilty to both the conspiracy and also an obstruction charge for hiding assets. Mr. Simpson's, of course, was based on deleting evidence. Mr. Simpson, I'm sorry, Mr. Faulkner's was predicated on hiding assets. And so, in that instance, those two convictions accumulated to 30 years. I do want to briefly discuss the statutory maximum argument that Ms. LaBelle had addressed. With one thing, I want to point out, first of all, in my 28J letters, I point out that this argument hasn't, I don't think, been accepted by any circuit, including by this circuit in the unpublished Pontefract case. I will state, though, that the statute, 3559B, doesn't say that the maximum applies unless it is identified in a specific statutory section. It says unless it's provided for in the law that describes the crime or the offense. Here, 1349 does not, by itself, describe the offense of conspiracy to commit mail fraud. We wouldn't expect a district court to look solely at that statute to find, for instance, how to instruct a jury on that crime. Instead, 1349 simply says when someone conspires or attempts to commit a crime under this section, we punish it just like we would an offense of that other section in this chapter. And so 1349 doesn't describe the offense on its own. Here, the government in its indictment incorporated 1341, 1343. They certainly do describe the offense, and they are part of the law. I don't think that Congress intended the term the law describing the offense to mean one solo statutory section. That 1341, 1343 worked in conjunction with 1349 to describe the offense, and those explicitly contain 20-year statutory maximums. I do ask the court to affirm the judgment imposed on this resentencing. Of course, if the court has any additional questions, I would like to answer them. Otherwise, I will cede the rest of my time. Thank you. May it please the court. Harking back, Your Honors, to the transcript of this sentencing, which the court below regarded as a resentencing in toto, you have only to look at the language that the judge invokes time and time again and the omission from the court's analysis to determine whether or not substantive reasonableness was achieved here. It is not possible to punish a person further for exercising their right to trial without running smack dab into the wall of reasonableness. It can't be done. The cases from this court are legion about what is reasonable. Over on this side, one can say, well, there was a variant sentence. How could a variant sentence ever be other than reasonable? It's not reasonable when all you consider, and this record is plain as day on that, when all you consider is the offense of conviction. Yes, Judge Fitzwater is a meticulous judge. I wholeheartedly agree with counsel. That said, even good judges make mistakes, and mistakes were made here that do not comply with the directives of the Supreme Court or this court. You cannot simply, the judge does not ever consider anything other than the offense of conviction, other than a purported lack of remorse, even though the defendant did write to him and express remorse for what he had done and drawn people into, and he said, as he has said all along, I am particularly disturbed by my role in Lone Star Power. That is to be, he is so distinguishable from Faulkner, they really don't belong in the same universe. Faulkner had, unbeknownst to everyone who knew him, including Simpson, had spent a great deal of time not in the Army as a special intelligence person learning telecommunications and therefore an expert, as he told everyone, but rather in a federal penitentiary more than once. And this was not even revealed until the end of the day. As for your query, Your Honor, about what did other people get, the maximum anyone got, including those who on a daily basis were assisting Faulkner in the creation of shell companies and hiring homeless people to serve certain roles and pretending that they were different businesses to avoid payment of bills and that sort of thing, those guys got ten years because that's where their plea agreement capped them. Did Faulkner testify against Simpson? Almost. No, he did not. What happened in this case, Your Honor, and I want to say one thing really quickly, there's not a single instance of Matthew Simpson, who ran a business since before he was 16, ever failing to pay a bill. His financial house as terms of his business was in order. I'm sorry. I wanted to get that out because that comparison is so inapt. I'm sorry, Judge. I have forgotten the question you asked me. Okay. Did he have the same counsel at trial, first sentencing, second sentencing? Me? You were at all three. Yes. Yes, I was trial counsel with Tom Mills, and I was his appeal counsel the first time. I was court appointed for the first appeal and court appointed for the resentencing in this case. I do want to say, again, just briefly, well, I have only one second left. I don't want to intrude on the court's time. Finish your sentence. Thank you. I beg your pardon? Finish your sentence. I did want to say, again, that Pontefract does not support the government's position on construing the statute because the court specifically points out that the statute of conviction there actually sets forth the maximum offense. That was not the case with respect to 1349. Thank you, Your Honor. Counsel, we recognize that you're court appointed and you've done a fine job in your client. We appreciate your willingness to take this case. Thank you, Your Honor.